UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-CT-3160-BO

FILED
JUL 1 5 2010
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

DONNIE DEAN SHOLAR, )
    Plaintiff, )
                     )
    v. )    O R D E R
                     )
DEPT. OF CORRECTIONS, )
et al., )
    Defendants. )

Donnie Dean Sholar filed a civil rights action pursuant to 42 U.S.C. §1983. He filed the action while an inmate in the North Carolina Department of Correction, but has since been released. Defendants Riddick and Brogden filed a motion for summary judgment [D.E. # 19] which was granted on September 10, 2009. Defendants Richard Broadwell, Michael Murphy, and Badri Hamra filed a motion for more definite statement [D.E. # 22] which was denied in the same court order. [See Id.] Defendants Broadwell, Murphy, and Hamra subsequently filed a motion for summary judgment. [D.E. # 33] Plaintiff was notified of the pending motion, but failed to respond. The motion is ripe for determination.

A.    Statement of the Facts

The Statement of Facts as found by the court in the summary judgment order of September 10, 2009, shall be restated here for clarity and continuity.

> On October 20, 2006, plaintiff was admitted to DOC custody at Neuse Correctional Center. [] (Id., Aff. Riddick ¶ 2) On [November 14][1], 2006, plaintiff was transferred to Duplin Correctional Center. (Id.)
> On November 28, 2006, plaintiff first reported symptoms of headache, numbness and tingling on the right side of his face, and a red spot on his eyebrow, which he thought might be a spider bite. (Id. ¶ 5). Nurse Tyndell

---

[1] The summary judgment order incorrectly reflects the date of transfer as the same date Sholar was admitted to the DOC. The actual date Sholar was transferred to Duplin is November 14, 2006.

checked his vital signs and gave him non-prescription medications to treat the symptoms. (Id.) Nurse Tyndell scheduled him for the first available appointment with a doctor and explained that he could return to "medical" as needed. (Id.) Plaintiff returned at 5:10 p.m. that day complaining of the same, but with increased pain. Id. Nurse Brogden instructed him to follow the treatment plan and advised him he was scheduled to see the doctor on November 30. (Id.)

The next morning, November 29, Nurse Tyndall obtained Dr. Murphy's authorization for plaintiff to be sent to an eye clinic. (¶ 6) However, Nurse Riddick noted in the chart that the Duplin Officer in Charge said no one was available to take plaintiff to the eye clinic. (Id.). She also made a chart entry which indicated plaintiff was scheduled for an appointment the following day, November 30, at Duplin Eye Associates. (Id.).

At 6:36 on November 30, 2006, Dr. Murphy saw plaintiff and prescribed medications to treat swelling and discomfort. (Id. ¶ 7) Later that day, plaintiff was transported to Duplin Eye Associates where the eye examination yielded a diagnosis of Herpes Zoster virus Ophthalmicus or shingles. (Id.) At 4:20 p.m. that afternoon, plaintiff was transferred to McCain Hospital for further treatment. (Id.) Plaintiff returned to Duplin on January 9, 2007.

The medical records show that Dr. Murphy entered medical orders in plaintiff's chart at 6:08 a.m. on January 11, 2007. (Id. ¶ 9). The records indicate three sick call requests between January 9, 2007, and January 23, 2007. (Id.). Medical staff responded to each request. (Id.).

(D.E. # 26)

Defendant Badri Hamra, M.D., was involved with Sholar's care during Sholar's custody at Neuse Correctional Institute. [Aff. Hamra, ¶ 4] Therefore, Hamra treated Sholar from the beginning of his incarceration, on October 20, 2006, until November 14, 2006. [Id.] Hamra did not treat Sholar prior to his incarceration at Neuse nor after his transfer to Duplin. [Id. and Ex. B] Thus, defendant Hamra's treatment of Sholar predates the above stated facts found in the first summary judgment order.

Upon admission to Neuse, Defendant Hamra complied with the North Carolina Department of Correction Policy #TX-II-2. [Hamra Aff. ¶ 6 and Ex. C] This policy reads inmates "will not be allowed to retain their medications until reviewed, identified, and approved

2

by the appropriate medical authority." [Id.] Hamra, therefore, conducted a thorough psychiatric evaluation to assess his psychiatric needs, including the continuation of antidepressants, or if additional psychiatric treatment or changes in treatment were necessary. [Id. ¶ 7 and 8 and Ex. E] After evaluation, Hamra found Sholar's mental status did not require psychiatric medication. He further found no justification to continue Lexapro. [Id.] In Hamra's opinion, Sholar exhibited no signs of depression or psychosis. [Id.] Hamra's affidavit states that his decision was not arbitrary but based on his psychiatric evaluation of Sholar's mental status. [Id. ¶ 7 - 10]

Hamra's affidavit also asserts that there is not scientific evidence which links halting Lexapro with shingles, the herpes varicella-zoster virus. [Id. ¶ 10]

Lastly, Hamra states that Sholar was prescribed 10 mg of Lexapro. [Id.] This is the lowest dosage that can be prescribed, therefore tapering the medication was not possible. [Id.]

Defendant Michael Murphy's affidavit states he made professional decisions about Sholar's medical condition and treatment based upon his training and experience. [Murphy Affidavit, ¶ 21] Michael Murphy, M.D., treated Sholar from November 14, 2006, though November 30, 2006, and then upon his return to Duplin on January 9, 2007, through February 16, 2008, at which point Sholar was released from custody. [Id. ¶ 4] Whether personally treating inmate Sholar or reviewing his chart, Defendant Murphy asserts he determined each and every complaint was appropriately addressed and treated. [Id. ¶ 21] Dr. Murphy states he did not disregard the symptoms of inmate Sholar's condition, but recognized the immediate need for a more focused and continuous treatment plan due to inmate Sholar's symptoms. [Id.] Thus, Dr. Murphy's affidavit states he ordered Sholar to be transported to Duplin Eye Associates where he was first diagnosed with HZO. [Id. ¶ 9 and 10, Ex. F and G] Upon Sholar's return to Duplin from McCain Hospital, Defendant Murphy conducted numerous chart reviews and diligently

3

prescribed and renewed Sholar's prescription for Neurontin (which required the submission of a URB request) as well as Vistaril and Ibuprofen.[Id. ¶ 12 - 19, Ex. H - L]

As for defendant Richard Broadwell, M.D., his affidavit states the following: Upon inmate Sholar's return to Duplin following his admission to McCain Hospital, defendant Broadwell treated Sholar. [Broadwell Aff. ¶ 4] During this period of time, Broadwell wrote comprehensive notes in inmate Sholar's medical chart detailing symptoms, objectives, assessments and plan of treatment on every occasion Sholar sought medical care. [Id., ¶ 23] Defendant Broadwell states he prescribed, renewed, added and/or decreased doses of medications to treat inmate Sholar symptoms as they presented and/or changed. [Id.] Defendant Broadwell further stated he conducted numerous chart reviews and diligently prescribed and renewed his prescription for Neurontin for post herpetic nerve pain, Motrin for pain, and T Gel Shampoo for inmate Sholar's itchy scalp. [Id.] When inmate Sholar developed a painful mass on the left brachium, Defendant Broadwell prescribed a double strength combination of antibiotics to combat a suspected CA-MRSA infection, and also prescribed Betasept, an antiseptic body wash for this same purpose. [Id.] Defendant Broadwell submitted a URB request for his continued care and follow-up appointment with the Ophthalmology Clinic. [Id.] Defendant Broadwell states he was never deliberately indifferent to any of inmate Sholar's medical needs and none of his actions were taken to cause harm to inmate Sholar. [Id.]

B.  Issues Presented

Plaintiff alleges deliberate indifference to his serious medical conditions claim. Specifically he argues: 1) his shingles were caused by stress from being taken off Lexapro (an antidepressant medication) while at Neuse Correctional Institution; 2) he was ignored when he

first reported the symptoms eventually diagnosed as shingles; and 3) he received inadequate care while recovering from shingles upon return to Duplin.

C.  Motion for Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 587. The court can rely on the medical affidavits and prison medical records in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

Defendants' defense of qualified immunity concludes this matter. Government officials are entitled to qualified immunity from civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects

government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The Fourth Circuit has recognized a two-pronged qualified immunity inquiry. First, the court must "decide whether a constitutional right would have been violated on the facts alleged." Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003). Second, assuming the right is violated, "courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Id. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, __ U.S.___, 129 S. Ct. 808 (2009). A court has discretion to decide which step in the two-prong test to analyze first. Pearson, 129 S. Ct. at 821.

Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.[2] Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). In order to be liable, the official must have actual knowledge or awareness of the need. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The indifference must be objectively harmful enough to establish a constitutional violation. See id. at 837–40. Disagreement with medical staff over the course of treatment is not sufficient to state an Eighth Amendment deliberate indifference claim. See, e.g., De'Lonta v. Angelone, 330 F.3d 630, 635 (4th Cir. 2003); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Likewise,

---

[2]To state a claim for inadequate medical care under 42 U.S.C. § 1983, a plaintiff must show deliberate indifference to his serious medical needs in violation of his Eighth Amendment right, if the individual is an incarcerated prisoner, and his Due Process rights, if the individual is a pretrial detainee. See Estelle v. Gamble, 429 U.S. 97 (1976). The standard under the Eighth Amendment and Due Process is the same.

6

Case 5:07-ct-03160-BO   Document 39   Filed 07/15/10   Page 6 of 7

mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06.

Sholar does not allege facts which breach the constitutional parameters of the Eighth Amendment on the part of defendants Hamra, Murphy, and Broadwell. It appears from the evidence before the court plaintiff was continually seen by medical professionals, evaluated, and treated for both mental and physical ailments. His medical illness of shingles was recognized and treated with concern and attentiveness by all involved. There was no delay and Sholar was not ignored by the medical staff as is reflected in the record. In fact, plaitniff was inthe hospital for 33 days because of the shingles. Furthermore, there is no scientific evidence which links halting Lexapro with shingles, the herpes varicellazoster virus. Any dispute as to the course of treatment is not cognizable under 42 U.S.C. § 1983. Russell, 528 at 319; see also Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993); Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Therefore, defendants Broadwell, Murphy, and Hamra are cloaked with qualified immunity.

F. Conclusion

For the above stated reasons, the motion for summary judgment filed by defendants Richard Broadwell, M.D., Michael Murphy, M.D., and Badri Hamra, M.D. is ALLOWED. Having so determined, the Clerk is DIRECTED to close the case and all other pending motions are denied as MOOT.

SO ORDERED, this the 14 day of July 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE